# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Alvin Sewell,                              :
                          Petitioner        :
                                            :
          v.                                :    No. 1086 C.D. 2022
                                            :    No. 1087 C.D. 2022
United Parcel Service (Workers'             :
Compensation Appeal Board),                 :
                          Respondent        :
                                            :
United Parcel Service and Liberty           :
Mutual Insurance Company,                   :
                          Petitioners       :
                                            :
          v.                                :    No. 1143 C.D. 2022
                                            :    No. 1144 C.D. 2022
Alvin Sewell (Workers' Compensation         :    SUBMITTED:  August 8, 2025
Appeal Board),                              :
                          Respondent        :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
          HONORABLE LORI A. DUMAS, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                          **FILED:   July 24, 2026**


In our previous opinion, *Sewell v. United Parcel Service (Workers' Compensation Appeal Board)* (Pa. Cmwlth., Nos. 1086, 1087, 1143 and 1144 C.D. 2022, filed July 10, 2025) (*Sewell I*), we affirmed in part the order of the Workers' Compensation Appeal Board and remanded for the Workers' Compensation Judge (WCJ) to correct the record.  Following remand and after reviewing a now complete record, we affirm the remainder of the Board's order.

Claimant, Alvin Sewell, submitted an initial claim petition[1] alleging that in March 2012, while working for United Parcel Service (Employer), he suffered an injury described as "aggravation/acceleration of right foot condition" due to "repetitive trauma[.]" Certified Record (C.R.), Item No. 2 at 2.[2] Claimant sought total disability benefits as of January 14, 2014. Claimant subsequently amended his claim petition to include a request for total disability benefits for the period May 6, 2012 to September 29, 2013. Employer filed an answer denying all material allegations, including that Claimant provided timely and adequate notice under the Workers' Compensation Act (Act).[3] Claimant submitted a second claim petition alleging that he sustained a further work injury on January 16, 2014. Claimant sought total disability benefits as of that date and ongoing, and Employer again denied all material allegations.

Before the WCJ, Claimant testified that a car ran over and crushed his right foot when he was six years old. While Claimant had a skin graft performed on his foot and had "a normal amount of discomfort from that time on," C.R., Item No. 8, Finding of Fact (F.F.) No. 5(l), Claimant led "a very active life," including competing in track and cross country during his schooling, F.F. No. 5(o). As for his employment, Claimant worked full time for Employer for 17 years, initially as an air walker and then as a pre-loader. Claimant described the pre-loader position as "very physical," requiring significant walking and getting in and out of trucks, and "constant pivoting, squatting, as well as lifting packages over [his] head." F.F. No. 5(e).

---

[1] A full recitation of the factual and procedural background can be found in *Sewell I*.

[2] The citations to the Certified Record refer to the now complete record, submitted to this Court on August 1, 2025, following remand.

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

Claimant began having significant issues with his right foot in early 2012. He testified regarding treatment he received from several doctors including his general practitioner, Dr. Levi Walker, as well as Drs. Diane Johnson and Arnold S. Broudy. Notably, Dr. Broudy took Claimant off work from May 6, 2012 through September 29, 2013. F.F. No. 5(k); *see also* C.R., Item No. 59, Ex. C-11 at 6. While Claimant returned to work on September 30, 2013, he "stopped working again on January 16, 2014, 'because he was experiencing recurrent breakdown of the soft tissue of the right foot at the instep where [his skin] graft was.'" *Sewell I*, slip op. at 5 [quoting F.F. No. 5(h)]. Claimant attributed the tissue breakdown of his right foot to the constant walking and stair climbing involved in his pre-loader job.

> In April 2014, Dr. Frederick Heckler
>
> performed surgery on Claimant's right foot to remove an osteophyte, i.e., bone spur. Claimant had issues with the skin graft after the surgery and the incision became infected, which delayed healing. When Claimant testified in April 2015, he was wearing a surgical shoe and had not been able to wear a regular shoe since the April 2014 surgery. When Claimant testified in May 2018, he was wearing shoes with extra depth and/or orthotics and continuing to see Drs. Walker, Johnson, and Burns for his right foot. He testified that he continues to experience swelling, pain, inflammation, and stiffness in his right foot, that his condition has gotten worse since January 2014, and that he does not believe he could perform his pre-loader job.

*Sewell I*, slip op. at 5-6.

In support of his petitions, Claimant submitted the deposition testimony of Dr. Walker who treated him for several years. In December 2015, Dr. Walker diagnosed Claimant "with arthropathy of the right foot and opined that the diagnosis was work-related." *Sewell I*, slip op. at 8. Dr. Walker

3

> explained that although Claimant had pre-existing foot arthropathy from age six, Claimant had been able to work for Employer for some years, and "it was the intensity of the activity with that foot at work that brought out the pain" in 2012. [F.F. No. 10 at 15]. In addition, when Claimant returned to work after some time being off, he developed ulcerations on his foot.

*Id.* Dr. Walker testified that when he saw Claimant again in March and June 2016, Claimant remained incapable of performing his pre-injury job of pre-loader.

Claimant also presented the deposition testimony of Dr. Johnson, who is board certified in podiatric medicine and surgery. Dr. Johnson "opined, within a reasonable degree of medical certainty, that Claimant's job duties as a pre-loader were a contributing factor to the issues he was suffering in his right foot." *Sewell I*, slip op. at 6. In August 2016, Dr. Johnson completed paperwork for Employer indicating

> that Claimant was not able to perform the normal functions of his job, e.g. excessive standing, walking, stair-climbing, and related functions, without aggravating his chronic right foot issues and risking further graft breakdown. She further recommended that "[C]laimant perform sedentary positions to decrease the likelihood of recurrent right foot complications." F.F. No. 9 at 13. Dr. Johnson testified that just a few hours of performing the duties of pre-loader could "absolutely" aggravate Claimant's condition. F.F. No. 9 at 14.

*Sewell I*, slip op. at 7.

Finally, Claimant offered the report of Dr. Broudy, a board certified orthopedic surgeon who first saw Claimant in March 2012. The WCJ sustained, in part, Employer's objection to Dr. Broudy's report as hearsay, and only considered it "to the extent it corroborate[d] Dr. Walker's testimony." F.F. No. 11. Notably, Dr.

4

Broudy shared the opinion of Dr. Walker that "[C]laimant was totally disabled from performing the job of pre-loader" for Employer and that he "will continue to have difficulty with the skin graft if he has to do any type of significant physical labor or excessive walking." *Id.*

Dr. Jeffrey Kann, Employer's medical expert, conducted an initial independent medical examination (IME) of Claimant in August 2015. Dr. Kann noted that "there was 'pretty significant arthritis,' which was a normal expectation given Claimant's childhood injury[.]" *Sewell I*, slip op. at 10 (quoting F.F. No. 12). However, Dr. Kann observed that Claimant's bone spur was gone, opining that it "was not work-related or aggravated by his work as a pre-loader." *Sewell I*, slip op. at 10. In February 2017, Dr. Kann conducted a second IME of Claimant, during which he

> observed that Claimant's arthritis, a progressive condition, was slightly worse than when he previously saw Claimant. However, Claimant's skin graft was well-healed with no openings or ulcerations, and Dr. Kann described Claimant's right ankle motion as quite good. While Claimant may have some discomfort from the arthritis, for which he may have to take anti-inflammatory medication, "he's certainly functional and employable." F.F. No. 12 at 19. Dr. Kann did not disagree with the early treatment recommendations of Drs. Broudy and Johnson concerning orthotics and light duty work, and he recognized that it took approximately eight months for the wound on Claimant's foot to heal after Dr. Heckler removed the bone spur. However, Dr. Kann reiterated his opinion that Claimant's employment was not in any way a causative factor in his arthritis or skin graft breakdown and that he could return to work as a pre-loader without restriction.

5

*Sewell I*, slip op. at 10-11.[4]

The WCJ granted Claimant's claim petition for the closed periods of May 6, 2012 through September 29, 2013, and January 16, 2014 to February 13, 2017.

> Based on the credited testimony of Claimant and the opinions of Drs. Johnson and Walker, the WCJ found that on March 22, 2012, Claimant sustained a work-related aggravation of the pre-existing condition of his right foot– namely his "underlying osteophytic arthritic condition" and his skin graft–that totally disabled him during the above closed periods. F.F. No. 17. The WCJ specifically rejected Dr. Kann's opinion that Claimant did not have a work-related disability during these periods. The WCJ further found that Claimant gave Employer proper notice of his work injury through conversations with Employer and the answers Dr. Johnson provided on Employer's form dated May 23, 2012[.]

*Sewell I*, slip op. at 11-12.

The WCJ also terminated Claimant's benefits effective February 13, 2017, the date Dr. Kann conducted the second IME.[5] Specifically, the WCJ found that as of that date, "the aggravation to [C]laimant's right foot that had been caused by the work activities had ceased and that [C]laimant's disability was . . . solely due to the underlying conditions of arthritis, formation of osteophytes[,] and the [sk]in graft." *Sewell I*, slip op. at 12 (quoting F.F. No. 19 at 22). While the WCJ discussed Dr. Kann's testimony extensively and relied upon it in granting Employer's

---

[4] Employer also presented the testimony of two of Claimant's supervisors, Cit DuBreucq and Clayton Delaney. *See Sewell I*, slip op. at 9-10. The testimony of these witnesses is not pertinent to the present issue.

[5] The WCJ further ordered that Employer be given credit for any short- and long-term disability benefits paid during these periods, dismissed Claimant's second claim petition as moot, and ordered Employer to pay Claimant's counsel reasonable costs of litigation.

6

termination petition, the list of exhibits indicated that Dr. Kann's deposition transcript was not admitted into evidence. *See* C.R., Item No. 8 at 2.

Claimant and Employer both appealed to the Board, each raising multiple issues. The Board issued a decision and order in December 2020, affirming the WCJ's order in most respects; however, the Board remanded to the WCJ solely to consider whether Claimant's litigation costs had been paid. The WCJ subsequently issued a decision and order explaining the parties agreed all litigation costs had since been paid. Claimant appealed and the Board affirmed. The cross-petitions to this Court followed.[6]

In *Sewell I*, we agreed with the Board that there was "substantial evidence to support the WCJ's determination that Employer received adequate and timely notice." *Sewell I*, slip op. at 15 [citing *Gentex Corp. v. Workers' Comp. Appeal Bd. (Morack)*, 23 A.3d 528, 534 (Pa. 2011)]. Thus, we affirmed the Board's order in this regard.

We further found that while the WCJ clearly relied on Dr. Kann's deposition testimony in terminating Claimant's benefits, the transcript of that deposition was not included in the record. *Sewell I*, slip op. at 17-18. The Board erred by not remanding to fix this administrative oversight and this Court could not conduct proper appellate review with respect to the termination of benefits because the record was incomplete. *Id.*, slip op. at 16-18 [citing Section 413 of the Act, 77 P.S. § 771; *Bentley v. Workers' Comp. Appeal Bd. (Pittsburgh Bd. of Educ.)*, 987 A.2d 1223, 1230 (Pa. Cmwlth. 2009); *Johnson v. Workers' Comp. Appeal Bd. (Budd Co.)*, 693 A.2d 1015, 1017 (Pa. Cmwlth. 1997)]. Therefore, we remanded to the Board to remand to the WCJ solely to correct the record as to Dr. Kann's deposition

---

[6] The cross-petitions were consolidated by the Court. For briefing purposes, Claimant was designated as petitioner, and Employer was designated as respondent.

7

transcript. *Sewell I*, slip op. at 18. That remand is complete as the Court has received the corrected record, including Dr. Kann's deposition transcript; thus, we now address the remainder of the Board's order.

The sole issue remaining for this Court's consideration is whether the record contains substantial evidence to support the termination of Claimant's benefits.[7] Claimant asserts that he still has symptoms of his accepted work injury that have not resolved, and that the WCJ erred by only considering the resolution of the symptom of the open wound on his foot in determining that his work injury has ceased. We disagree.

An employer seeking to terminate workers' compensation benefits "bears the burden of proving either that the [claimant]'s disability has ceased, or that any current disability arises from a cause unrelated to the [claimant]'s work injury." *Roccuzzo v. Workers' Comp. Appeal Bd. (Sch. Dist. of Phila.)*, 721 A.2d 1171, 1173 (Pa. Cmwlth. 1998). Where, as here, a claimant has a pre-existing, non-work-related condition, he is no longer entitled to benefits when he has fully recovered from any work-related injury caused by an aggravation of that condition, in other words when he returns to baseline. *Bethlehem Steel Corp. v. Workmen's Comp. Appeal Bd. (Baxter)*, 708 A.2d 801 (Pa. 1998); *Verizon Pa., Inc. v. Workers' Comp. Appeal Bd. (Hernandez)* (Pa. Cmwlth., No. 620 C.D. 2009, filed Sept. 16, 2009), slip op. at 12.[8] As our Supreme Court has explained, "[i]t undermines the principles of the Act to

---

[7] Employer argues that this issue has been waived because it was not included in the statement of issues portion of Claimant's docketing statement. However, our rules do not require inclusion of an issue in a party's docketing statement for an issue to be properly preserved. Claimant *did* fairly raise the issue in his petition for review, and we are able to address it based on the certified record; therefore, we reject Employer's waiver argument. *See* Pa.R.A.P. 1513(d)(5).

[8] This unreported opinion is cited for its persuasive value only and not as binding precedent. *See* Pa.R.A.P. 126(b)(1); 210 Pa. Code § 69.414(a).

8

impose liability on an employer for the existence of a condition present from childhood when no residual work-related injury is demonstrated." *Bethlehem Steel Corp.*, 708 A.2d at 804.

Here, it is beyond dispute that Claimant has "significant pre-existing right foot problems" dating back many years, namely osteophytic arthritis and a skin graft. F.F. No. 17. As the WCJ noted, Claimant's own doctors did not claim that either the osteophytes (bone spurs) or the arthritis was due to anything but the childhood trauma, and neither opined "that the osteophytic formation or any increase in [C]laimant's underlying arthritis occurred as a result of [C]laimant's job duties[.]" F.F. No. 19 at 22. *See also* C.R., Item No. 17 at 10 (Dr. Walker "agreed that the arthritis in Claimant's foot is a direct result of the childhood accident, as are the [bone] spurs"), 11-12 (Dr. Johnson "agreed that the . . . osteophyte was not caused by work but resulted from a degenerative arthritic condition"). However, these pre-existing conditions were aggravated by and became symptomatic due to Claimant's job duties, and resulted in periods of compensable disability. *See* F.F. No. 17.

Nonetheless, the WCJ specifically credited the testimony of Dr. Kann that Claimant had returned to baseline as of his second IME in February 2017. By that time, Claimant had been out of work for three years. Dr. Kann observed a well-healed skin graft, with no openings or ulcerations. F.F. No. 19. Claimant's ankle motion was quite good, and his neurological examination was unremarkable. *Id.* While Dr. Kann acknowledged that Claimant reported discomfort, it was in the area of his foot with the known arthritis. *Id.* In short, Dr. Kann's testimony, which the WCJ found credible, amounts to substantial evidence to support the conclusion that the work-related aggravation of Claimant's pre-existing conditions had ceased. Claimant's arguments go to the weight of the evidence and witness credibility,

9

determinations properly left to the WCJ as fact finder. *See, e.g.*, *Casne v. Workers' Comp. Appeal Bd. (Stat Couriers, Inc.)*, 962 A.2d 14, 17 (Pa. Cmwlth. 2008) ("A reviewing court does not reweigh the evidence or review witness credibility; a reviewing court determines whether the WCJ's findings have the requisite measure of support in the record.").

Accordingly, we affirm the remainder of the Board's order.

_____
**BONNIE BRIGANCE LEADBETTER**
President Judge Emerita

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Alvin Sewell,                                          :
                          Petitioner                   :
                                                       :
            v.                                         :   No. 1086 C.D. 2022
                                                       :   No. 1087 C.D. 2022
United Parcel Service (Workers'                        :
Compensation Appeal Board),                            :
                          Respondent                   :

United Parcel Service and Liberty                      :
Mutual Insurance Company,                              :
                          Petitioners                  :
                                                       :
            v.                                         :   No. 1143 C.D. 2022
                                                       :   No. 1144 C.D. 2022
Alvin Sewell (Workers' Compensation                    :
Appeal Board),                                         :
                          Respondent                   :

# **O R D E R**

AND NOW, this 24th day of July, 2026, the remainder of the order of the Workers' Compensation Appeal Board is AFFIRMED.

_____
**BONNIE BRIGANCE LEADBETTER**
President Judge Emerita